IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Alik Pike fka, Gregory Waterman,<br><br>Petitioner,<br><br>vs.<br><br>Terry L. Stewart, et al.,<br><br>Respondents. | No. CIV 02-2368-PHX-JWS (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

Gregory Alik Pike filed a timely petition for writ of habeas corpus on November 25, 2002, challenging his convictions for kidnapping and felony murder. He raises four grounds in his habeas petition: 1) the Arizona Court of Appeals erred by not allowing him to file an untimely Petition for Review with the Arizona Supreme Court, in violation of the prison mailbox rule; 2) trial counsel provided ineffective assistance by failing to interview witnesses who would have supported Pike's theory of the case, failing to request a *Dessureault*[1] hearing, and by failing to file a motion for mistrial based on a detective's contact with a juror; 3) the state unconstitutionally used perjured testimony of an investigating officer at trial; and 4) the trial court erred by denying Pike an evidentiary hearing in the post-conviction proceedings. Respondents argue that grounds one, three, and four are

---

[1] *State v. Dessureault*, 104 Ariz. 380 (1969).

procedurally defaulted and that with regard to ground two, Pike cannot demonstrate either that counsel's performance was deficient, or that such deficient performance caused any prejudice. The Court agrees and recommends that the petition be denied and dismissed with prejudice.

## FACTUAL HISTORY

The facts supporting Pike's convictions are summarized in the Arizona Court of Appeals memorandum decision:

> In July 1993, the body of Christopher Allen McGee (victim) was discovered riddled with stab wounds and buried under palm leaves in a desert area in north Phoenix. During the course of the investigation into the matter, Maricopa County Sheriff's Department Detectives Todd Bates and Charles Ordell met with defendant, then seventeen years of age, at his home in the late afternoon and requested that he accompany them to the sheriff's office to be interviewed. Defendant voluntarily agreed to accompany the detectives and the three drove together to the sheriff's department and proceeded to an 8 X 10 foot interview room located in the building. Although defendant was not told so, the interview was tape recorded and videotaped.
>
> . . .
>
> Defendant admitted to being an eyewitness to the kidnapping/murder, but denied having any involvement in the crimes. At the end of the interview, Bates asked defendant if he or Ordell had threatened him into revealing information about the crimes. Defendant replied, "Beside that big gun on your side, no ha ha?" [*sic*]
>
> On November 3, 1993, a Maricopa County Grand Jury returned an indictment charging defendant with kidnapping, a class 2 dangerous felony, and first-degree murder, a class 1 felony. After his arrest, defendant pled not guilty....
>
> At trial, two eye-witnesses testified that, shortly before victim's murder, defendant was seen with victim at an apartment, along with three other men, and may have taken part in beating victim. Testimony revealed that defendant or others then tied victim to a chair and that one man in possession of a knife told victim, "You know you're going to die?" Defendant appeared to be at the apartment voluntarily and never overtly protested to the treatment of victim.
>
> Witnesses testified that defendant left the apartment with the bound victim and the others and returned to the apartment later without the victim. Defendant had blood on his clothing and had a discussion with the others about the victim's death. Defendant took the stand and admitted he went with the others and the bound victim to a deserted area, that two of his companions stabbed victim to death, and that he assisted in dragging victim's body towards a burial site. He testified that he did nothing to assist victim during the evening because he had been under duress. He admitted that he had

> possession of a gun at the apartment for a short time. Portions of defendant's videotaped statements were played before the jury.
>
> At the close of trial, the jury found defendant guilty as charged and he was duly sentenced to concurrent terms of twenty-five years on the felony murder conviction and twenty-one years on the kidnapping conviction.

(Doc. #120, Exh OOO at 2-4).

## STATE COURT PROCEDURAL HISTORY

Pike raised only one issue on direct appeal: whether the trial court clearly abused its discretion by failing to suppress his statements made to the police. (Doc. #119, Exh MMM, p. 21). Finding no clear error in the trial court's voluntariness determination, the Arizona Court of Appeals affirmed Pike's conviction. He filed a petition for review with the Arizona Supreme Court (Doc. #120, Exh QQQ, p. 1) which the Court denied. (*Id*., Exh SSS, p.1). Pike filed a Notice of Post-Conviction Relief ("PCR") (*Id*., Exh XXX) and the trial court appointed counsel to represent Pike in his PCR proceedings. (*Id.*, Exh YYY).[2] Counsel was unable to find any viable PCR claims to raise on Pike's behalf, and the trial court granted him an extension of time to file a pro per petition for PCR. (*Id.*, Exh AAAA).

In his petition for post-conviction relief, Pike argued that he received ineffective assistance of counsel as a result of counsel's failure to 1) interview critical defense witnesses that would have supported Pike's theory of the case; 2) object to the in-court identification and/or request a *Dessureault* hearing; and 3) file a motion for mistrial based upon a detective's contact/conversation with a juror. (*Id*., Exh BBBB, pp. 2-5). He further argued that a separate violation occurred when Sarah Rice's identification testimony was admitted at trial without a *Dessureault* hearing, *id*. at 5-6, and additionally that the state unconstitutionally used Sarah Rice's perjured testimony. *Id*. at 6-10. Pike contended that having presented a colorable claim for relief, he was entitled to an evidentiary hearing. *Id.* at 10-11.

---

[2]Counsel withdrew, citing a conflict, and the court appointed new counsel. (*See* Doc. #120, Exh ZZZ).

- 3 -

1  The trial court denied Pike's petition, finding that he "failed to address any new items
2  not addressed to the court of appeals, or precluded, or inadequate as a matter of law." (*Id.*,
3  Exh FFFF). Pike filed a Petition for Review with the Arizona Court of Appeals (*Id.*, Exh
4  GGGG) which was similarly denied. (*Id.*, Exh IIII). Because his Petition for Review was
5  not timely filed with the Arizona Supreme Court, the action was dismissed. (*Id.*, Exh
6  NNNN, OOOO).

## EXHAUSTION OF REMEDIES

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini v. Stewart*, 249 F.3d 895, 898-99 (9th Cir. 2001). The exhaustion requirement will not be met where the Petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are available in state court, then the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* However, if the court finds that the petitioner would have no state remedy were he to return

- 4 -

1 to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal court may decline to consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Further, a procedural default may occur when a Petitioner raises a claim in state court, but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S. at 730-31. In such cases, federal habeas review is precluded if the state court opinion contains a plain statement clearly and expressly relying on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *See Harris*, 489 U.S. at 260. A state procedural default ruling is "independent" unless application of the bar depends on an antecedent ruling on the merits of the federal claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, just as in cases involving defaulted claims that were not fairly presented, federal habeas review of the claims is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

## DISCUSSION

In his first ground for relief, Pike alleges that the Arizona Court of Appeals erred by not allowing him to file an untimely Petition for Review with the Arizona Supreme Court, in violation of the prison mailbox rule set forth in *Houston v. Lack*, 487 U.S. 266 (1988). Respondents properly note, however, that "*Houston* did not establish or address any

1 constitutional right to force state courts to review untimely Petitions for Review . . . but only
2 addressed a *federal procedural issue* concerning how the ["]prison []mailbox rule" applied
3 to the filing of a notice of appeal *in federal courts*." (Doc. #116, p. 22) (emphasis in
4 original). Because the Arizona Court of Appeals made a determination regarding Arizona
5 state law, the federal courts have no ability to provide relief on habeas review. *See Estelle*
6 *v. McGuire*, 502 U.S. 62, 67-68 (1991) (Holding "that it is not the province of a federal
7 habeas court to reexamine state-court determinations on state-law questions. In conducting
8 habeas review, a federal court is limited to deciding whether a conviction violated the
9 Constitution, laws, or treaties of the United States."); *see also Lewis v. Jeffers*, 497 U.S. 764,
10 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.")

11 In his second ground for relief, Pike alleges ineffective assistance of trial and appellate
12 counsel. In order to prevail upon a claim of ineffective assistance of counsel, he must meet
13 two independent requirements: that counsel's performance was deficient, and that such
14 deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687
15 (1984). Pike was required to show that counsel's representation "fell below an objective
16 standard of reasonableness, " *Id.* at 688, and that " that there is a reasonable probability that,
17 but for counsel's unprofessional errors, the result of the proceeding would have been
18 different." *Id.* at 694.

19 Pike first argues that counsel was ineffective for failing to interview and/or call as
20 witnesses two people who he asserts were critical to his defense: Christopher Reischman and
21 Lee Ray Crump. He asserts that both would have testified to his minimal participation in the
22 kidnapping and murder. As a co-defendant in a severed trial, Reischman could not have been
23 called as a witness in Pike's trial. Reischman undoubtedly would have invoked his Fifth
24 Amendment privilege not to testify. *See United States v. Klinger*, 128 F.3d 705, 709 (9th Cir.
25 1997). In addition, the trials were severed largely because of the co-defendants' antagonistic
26 defenses, blaming each other for the murder, and to ensure that the interview statements of
27 the various defendants would not be used against the other defendants. It was not objectively

28 - 6 -

1 unreasonable for counsel to have avoided presenting testimony that could have opened the
2 door to evidence that would be damaging to his client. *See Brodit v. Cambra*, 350 F.3d 985,
3 993-94 (9th Cir. 2003).

4 Pike admits that Lee Ray Crump, the second witness, would not testify to any personal
5 knowledge of the crime, because he was not present during the kidnapping and murder. His
6 testimony would have been limited to inadmissible hearsay: that he heard Assyd, a co-
7 defendant, admit to the murder. Again, it was not unreasonable for counsel not to call a
8 witness whose testimony would have been precluded as hearsay. In addition, it was
9 unnecessary to interview Crump to learn this information, because it was known to the
10 parties through police reports and pleadings. Finally, the Court agrees with Respondents that
11 even assuming both witnesses would have agreed to testify, and would have testified to
12 something other than hearsay, their testimony would not have affected Pike's defense of
13 duress or his liability as an accomplice in the offenses.

14 In his second claim of ineffective assistance, Pike contends that counsel should have
15 requested a *Dessureault* hearing to challenge Sarah Rice's identification of him. This fails
16 for several reasons. First, there was no identification issue at trial. Rice admitted she knew
17 Pike. Other witnesses and Pike testified that he was present at the apartment when the events
18 took place. Second, Pike asserted the defense of duress; in doing so he conceded
19 involvement in the kidnapping and murder. Having selected the primary defense theory, it
20 was within the wide range of reasonable professional judgment for counsel to then not pursue
21 a strategy that was contradictory to this theory. *See Correll v. Stewart*, 137 F.3d 1404, 1411
22 (9th Cir. 1998). Finally, as Respondents point out, the real challenge to Sarah Rice's
23 testimony was the inconsistencies and contradictory statements - something that counsel
24 highlighted both in cross-examination and in closing argument.

25 In his final claim of ineffective assistance, Pike argues that counsel was ineffective
26 for failing to file a written motion for a mistrial following the court's open-court
27 consideration of alleged juror contact between a police detective and a juror. Just prior to

28

1 the reading of the verdict, the detective arrived at the courthouse and stepped outside to
2 smoke. One of the jurors arrived in the smoking area, and attempted to start a conversation
3 with the detective. Recognizing the person as a juror, the detective did not respond and soon
4 left the area. Defense counsel brought the issue before the court and argued for a possible
5 mistrial. The trial court concluded that there was no impropriety. Any subsequent written
6 motion would have been without merit, the oral motion having already been denied. Counsel
7 is not required to file groundless motions. *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir.
8 2001).[3] In his third ground for relief, Pike alleges that the state used perjured testimony at
9 trial. This claim, however, was not fairly presented to the Arizona Court of Appeals because
10 despite alleging that "Ms. Rice's perjured testimony was allowed, even encouraged by the
11 State in it's [sic] prosecution of the Defendant" in his Petition for Post-Conviction Relief
12 (Doc. #120, Exh BBBB, p. 10), Pike did not describe a federal legal theory on which the
13 claim is based. *See Bland*, 20 F.3d at 1472-73. Because he would be without a remedy were
14 he to return to state court, his third ground for relief is procedurally defaulted.

15 In his fourth ground for relief, Pike alleges that the trial court erred by denying him
16 an evidentiary hearing on his claims in the post-conviction proceedings. Whether Pike was
17 entitled to an evidentiary hearing is governed by Rule 32.8 of the Arizona Rules of Civil
18 Procedure. Because this claim is one regarding a construction of state law, the federal courts
19 cannot grant habeas relief. *Estelle*, 502 U.S. at 67-68.

20 **IT IS THEREFORE RECOMMENDED** that Petitioner Gregory Pike's petition for
21 writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE** (Doc. #1).

---

[3] Pike does not argue that appellate counsel was ineffective, but simply includes this in the heading of his "Ground II" claim. Assuming that he is making the argument, because Pike did not fairly present this claim in state court, and no state remedies remain available to him (*see* Doc. #120, Exh NNNN, OOOO), this element of his ineffective assistance of counsel claim would also be procedurally defaulted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 1st day of November, 2007.

_____
David K. Duncan
United States Magistrate Judge